**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garrett White, M.D., a North Carolina citizen, <br><br> Plaintiff, <br><br> vs. <br><br> AKDHC, LLC, dba Arizona Kidney Disease & Hypertension Center, an Arizona limited liability company, <br><br> Defendant. | No. CV-08-0890-PHX-NVW <br><br> **ORDER** <br><br> [Not for Publication] |

Pending before the Court is Defendant Arizona Kidney Disease & Hypertension Center, LLC's ("AKDHC") Motion for Attorneys' Fees and Non-Taxable Costs (doc. # 96). In connection with the motion, the Court has considered AKDHC's Amended Memorandum (doc. # 106), Plaintiff Garrett White's Response (doc. # 110), and AKDHC's Reply (doc. # 111).

**I.     Background**

On May 8, 2008, White sued AKDHC for breach of contract, breach of the implied covenant of good faith and fair dealing, and racial discrimination in violation of 42 U.S.C. § 2000e-2 and 42 U.S.C. § 1981. The claims were predicated on AKDHC's termination of White's employment as a nephrologist due to his communicative misconduct and failure to remit to the company all honoraria received for giving paid lectures.

On May 1, 2009, AKDHC filed its Motion for Summary Judgment (doc. # 68) on all four claims, which this Court granted in its entirety. (Doc. # 92). In evaluating the racial discrimination claims, the Court found that by failing to demonstrate that he was similarly situated to other employees outside of his protected class, White had not established a prima facie case of racial discrimination. (*Id.* at 18-19.) It also found that White had produced insufficient evidence to negate the "same actor" inference that the termination was not racially-motivated in light of the fact that approximately ten of the individuals who voted to terminate White's employment were the same individuals who initially voted to hire him. (*Id.* at 21-22.)

Having prevailed on all claims, AKDHC filed its Motion for Attorneys' Fees and Non-Taxable Costs (doc. # 96) on October 16, 2009. Pursuant to the parties' Employment Agreement, A.R.S. § 12-341.01, 42 U.S.C. § 2000e-5(k), 42 U.S.C. 1988(b), and other applicable law, AKDHC seeks $230,086.50 in attorneys' fees, $12,518.62 in related non-taxable expenses, and $33,079.84 in fees and expenses incurred in preparing the fee application.

## II. Attorneys' Fees for the Contract Claims

### A. Employment Agreement Entitles AKDHC to Fees

On September 12, 2003, White and AKDHC, through its CEO Susan Price, signed an Employment Agreement. Provision 15.8 of the Employment Agreement states:

> In the event it becomes necessary for either party to employ counsel to enforce any of the provisions of this Employment Agreement, or for the breach thereof, then, in that event, the losing party agrees to pay the prevailing party all costs and expenses incurred, including reasonable attorneys' fees.

Pursuant to the above mandatory fee-shifting provision, because AKDHC prevailed on White's claims of breach of the employment agreement and breach of the covenant of good faith and fair dealing, AKDHC is entitled to reasonable attorneys' fees incurred in defending against the two claims. *See Chase Bank v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (Ct. App. 1994) ("[T]he court lacks discretion to refuse to award fees under a contractual provision.").

**B.     Reasonableness of Amount Sought**

AKDHC seeks $10,704.00 in fees specifically incurred in defending against the two contract claims and $137,833.66 (or two thirds) of the general fees not readily assignable to any specific claim, for a total of $148,537.66.

**1.     Amount is Presumptively Reasonable.**

Determining a fee award involves calculating the "lodestar figure" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The "lodestar figure" is presumptively reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Fischer*, 214 F.3d at 1119 n.4. In calculating the lodestar figure, courts must consider the relevant *Kerr* factors, which include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

AKDHC arrived at its $148,537.66 figure by multiplying the number of hours spent litigating this case by the hourly rate of each attorney involved. White maintains that many of the hours expended were unnecessary and that the rates charged by AKDHC's counsel were excessive for the local market. Neither contention is persuasive. First, while the rates charged by AKDHC's counsel are at the high end of the local Phoenix market, they are not excessive for lawyers of the skill and experience of AKDHC's counsel. Second, to the extent the time and effort expended in this aggressively-litigated case may be characterized as unreasonable or unnecessary, it was by no means at AKDHC's behest. White significantly amended his complaint twice during the case, either abandoning or adding new claims each time. Because he had a parallel case pending in state court for the first four months of this federal action, it was

necessary for AKDHC to spend time researching the implications of claim and issue preclusion. As far as discovery is concerned, White conducted a total of ten depositions, all of which AKDHC was forced to defend. In contrast, AKDHC conducted approximately three, one of which was White's deposition. Finally, AKDHC's vigorous defense of this case was more than justified in light of White's initial valuation of his case at $1.8 million and the fact that AKDHC prevailed on all the relief sought. Therefore, the $148,537.66 figure is presumptively reasonable.

### 2. The March 4, 2009, Order Warrants a Slight Reduction.

White contends that this Court's March 4, 2009, order, which approved the parties' stipulated dismissal of Defendant Susan Price with each party to bear its own fees and costs associated therewith, requires a 50% reduction in general fees incurred by AKDHC before that date. White arbitrarily bases his 50% figure on the fact that the order reduced the number of defendants from two to one. The argument lacks merit.

The great majority of time spent defending Susan Price occurred before White initiated this action on May 8, 2008. By that date, White had already deposed Ms. Price and AKDHC had already conducted discovery with respect to the two state law claims asserted solely against Ms. Price in the state court action and later in White's First Amended Complaint (doc. # 30) in this action. AKDHC is not seeking fees incurred prior to May 8, 2008. At the hearing on this motion, AKDHC stated that only $3,183.00 of the general fees were devoted solely to defending Ms. Price in this action. Therefore, only $3,183.00 will be deducted from the $148,537.66 lodestar figure pursuant to the March 4, 2009, order.

### 3. Two Thirds of the General Fees is Reasonable.

While AKDHC argues that the general fees should be apportioned three ways, with a third assigned to each of the contract claims and a third assigned to the discrimination claims collectively, White argues that they should be apportioned four

- 4 -

ways between each of the four claims. Setting aside arbitrary distinctions between claims, the Court starts with a baseline presumption that the majority of general fees not readily assignable to any specific claim would likely have been incurred regardless of the nature and number of claims asserted. From there, it cannot be said that AKDHC's request for two thirds of the general fees is unreasonable. Therefore, in connection with the two contract claims, AKDHC is entitled to an award of $148,537.66 less the $3,183.00 incurred solely in defending Ms. Price prior to March 4, 2009, for a total of $145,354.66.

### III.    Attorneys' Fees for the Discrimination Claims

In connection with White's Title VII and 42 U.S.C. § 1981 discrimination claims, AKDHC seeks $12,673.00 in fees specifically incurred to defend against the two claims and the remaining third of the general fees not readily assignable to any specific claim, for a total of $81,548.83.[1]

"Attorneys' fees in civil rights cases should only be awarded to a defendant in exceptional circumstances." *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1980). Therefore, a prevailing defendant in a Title VII or 42 U.S.C. § 1981 action may recover attorneys' fees and expenses only upon a finding that "the claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see also Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994). Although not necessary, a finding of subjective bad faith in bringing or continuing to litigate a claim provides "a stronger basis" for awarding fees to the defendant. *Christiansburg*, 434 U.S. at 421-22. Finally, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not

---

[1]There is an apparent calculation error in AKDHC's Amended Memorandum (doc. # 104). While page 12 indicates the amount sought in connection with the discrimination claims is $81,548.83, the summation of the billing entries in Exhibit G (doc. # 104-5) indicates a total amount of $81,589.83. The lower amount will be used.

- 5 -

ultimately prevail, his action must have been unreasonable or without foundation." *Id*. "Decisive facts may not emerge until discovery or trial." *Id.* at 422.

As a preliminary matter, although this aggressively-litigated case was certainly charged with emotion, the Court does not conclude that White brought his claims in subjective bad faith. Therefore, the inquiry turns on whether the claims were frivolous or otherwise lacked foundation. That is a close question. AKDHC argues that because White failed to establish a prima facie case of racial discrimination, and because he failed to come even remotely close to negating the "same actor" inference, an award of fees is warranted. While both assertions were true for purposes of summary judgment, the strength of the claims for purposes of awarding fees must be evaluated from the perspective of what White knew at the outset rather than what he knew at the close of discovery.

To establish a prima facie case of racial discrimination, White had to prove that (1) he belonged to a protected class, (2) he was qualified for his job, (3) he was subjected to an adverse employment action, and (4) he was similarly situated to more favorably-treated employees outside of his protected class. *See Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006). He knew from the outset that he could establish the first three elements with relative ease. However, the merits of the fourth element were likely unknown prior to discovery. At the close of discovery, it was evident that White was not similarly situated to other employees in all material respects because while others had been reprimanded for behavioral issues, no one else had kept honoraria in supposed contravention of AKDHC's "common pot" remittance policy. However, there is nothing to suggest that White was aware of that fact prior to filing his complaint. Therefore, on balance the Court concludes that White's discrimination claims were not frivolous or groundless simply because he failed to establish a prima facie case of discrimination at the close of discovery.

The same holds true for the "same actor" inference. "[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions

occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996). In this case, because approximately ten of the shareholders who voted unanimously to terminate White's employment had voted to hire him three years earlier, there was a strong inference that the termination was not racially-motivated. White knew, prior to filing suit, which shareholders had interviewed him. However, it is unclear whether he knew at that time which shareholders had voted to hire and fire him. Therefore, it cannot be said that White's discrimination claims were frivolous or groundless in light of the now-apparent applicability of the same actor inference. For these reasons, the Court will exercise its discretion to deny fees for the discrimination claims.

**IV.    Non-Taxable Expenses**

AKDHC also seeks $12,518.62 in non-taxable expenses. For the same reason the Court's March 4, 2009, order warranted no general 50% reduction in fees, it warrants no such reduction in non-taxable expenses. The amount incurred by AKDHC solely in defending Ms. Price prior to March 4, 2009, has already been deducted. Furthermore, the roughly $6,861.04 in travel expenses incurred by AKDHC's counsel is reasonable. Therefore, AKDHC is entitled to $12,518.62 in non-taxable expenses.

**V.    Attorneys' Fees & Expenses Incurred in Seeking Fees & Expenses**

Arizona law allows the prevailing party to recover attorneys' fees and expenses incurred in seeking an award of attorneys' fees and expenses post-judgment. *See Schweiger v. China Doll Rest.*, 138 Ariz. 183, 188, 673 P.2d 927, 932 (Ct. App. 1983); *see also Gametech Int'l, Inc. v. Trend Gaming Sys., L.L.C.*, 380 F. Supp. 2d 1084, 1101 (D. Ariz. 2005). In connection with preparing its fee application, AKDHC has incurred $33,079.84 in fees and non-taxable expenses to date. Because AKDHC is entitled to 65.07% of the total amount of fees and expenses sought in connection with the underlying claims, it is reasonable to award that same percentage of fees and expenses incurred in preparing the fee application. *See Harris v. McCarthy*, 790 F.2d 753, 758059 (9th Cir.

1986) (affirming district court's award of fees incurred in preparing the fee application in the same proportion that fees were awarded on the underlying claims).  Therefore, AKDHC is entitled to an additional $21,525.05 in fees and expenses incurred in preparing and defending this fee application, which, together with the $157,873.28 awarded on the underlying claims, amounts to $179,398.33.  AKDHC is also entitled to post-judgment interest on that amount pursuant to 28 U.S.C. § 1961.

IT IS THEREFORE ORDERED that AKDHC's Motion for Attorneys' Fees and Non-Taxable Costs (doc. # 96) is granted in the amount of $179,398.33.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of AKDHC, LLC, against Plaintiff Garrett White, M.D., for attorneys' fees in the amount of $179,398.33, plus interest at the federal rate until paid.

DATED this 15th day of March, 2010.

_____
Neil V. Wake
United States District Judge